[Civ. No. 53339. First Dist., Div. One. Jan. 25, 1984.]

DOW JONES COMPANY, INC., Plaintiff and Respondent, v.
GERARD AVENEL et al., Defendants and Appellants.

COUNSEL

William J. Ziegler, Jr., and Adamont N. Georgeson for Defendants and Appellants.

David J. Cook, Clifford J. Liehe, Cook & Perkiss and Cook, Perkiss & Liehe for Plaintiff and Respondent.

**OPINION**

**HOLMDAHL, J.**—This is an appeal from a judgment amending judgment, the amendment naming appellants as judgment debtors.

The judgment is affirmed.

### Statement of Facts and Procedural History

Communimark, Inc. (hereafter Communimark), defendant below, is a California corporation which acts as an advertising media broker. Plaintiff and respondent Dow Jones Company, Inc. (hereafter, Dow Jones), is a corporation which furnished newspaper advertising services to Communimark between 1976-1980. The amount claimed on an open book account was $208,701.52. Dow Jones accepted a promissory note from Communimark for the value of the unpaid services.

Dow Jones, thereafter, filed suit on the account and note. Later, it filed a motion for summary judgment. The court granted the motion and awarded damages to Dow Jones in the amount of $208,701.52, plus interest.

Dow Jones then filed a motion to amend the judgment to include appellants Gerard Avenel, an individual, and Avenel Imports, Ltd., a corporation (hereafter, Avenel Imports), as judgment debtors. They were not parties to the original action. The basis of the motion was that appellants were the alter egos of Communimark. At the hearing on the motion, appellants presented documents and oral testimony on the issue of their alter ego liability for the actions of Communimark.

The court found that appellants had acted as the alter egos of Communimark. The court made findings of fact, among them the following: Gerard Avenel was the 100 percent shareholder, president, and chief executive officer of Communimark and the 100 percent shareholder, chief executive officer, and only director of Avenel Imports; he acquired the corporate stock of Communimark for no consideration whatsoever; Communimark incurred an indebtedness to Dow Jones of more than $200,000 during 1978; in 1976, Communimark acquired real property worth $320,000, which Gerard Avenel used as his personal residence and which was ultimately conveyed to him; he paid no rent on the premises in 1978 and 1979; during 1978, Communimark conveyed all of its "wholly paid office furniture, fixtures and equipment" to Avenel Imports for an unsecured promissory note and paid to Avenel Imports $115,000 within a period of 25 months; Gerard Avenel personally received $70,500 from Communimark, which payment was not

marked in the payroll books; accounts receivable of Communimark from Avenel Imports for 1978 and 1979 amounted to more than $150,000.

On the basis of these findings the court made several conclusions of law, including the following: The assets of Communimark were controlled and manipulated for the benefit of Gerard Avenel and Avenel Imports, resulting in a great loss to Communimark's creditors; Gerard Avenel and Avenel Imports were the alter egos of Communimark; adherence to fiction and separate existence of Communimark, Gerard Avenel, and Avenel Imports would sanction a fraud and promote an injustice; Gerard Avenel and Avenel Imports were not entitled to a jury trial as a matter of right; and, the court had jurisdiction to grant the motion to amend judgment.

Accordingly, on May 7, 1981, the court amended its judgment to add appellants as judgment debtors. From that judgment, appellants filed a timely notice of appeal.

## Issues

Appellants make three contentions. First, they claim that they were entitled to a jury trial on the issue of their alter ego liability. Second, they argue that the court was not empowered to amend the summary judgment. Finally, they contend that the amendment to the judgment, including them as judgment debtors, denied them due process rights.

We consider these issues in order.

## Right to a Jury Trial

Dow Jones' motion to add judgment debtors was "based upon the grounds that the business affairs and activities and conduct of COMMUNIMARK, INC., GERARD AVENEL, [and] AVENEL IMPORTS LTD., a corporation, . . . are so commingled, intertwined and mixed that it is virtually impossible to separate the[ir] identit[ies], [and] that . . . [they are] the alter ego of each other . . . ." The trial court's findings and judgment essentially correspond to those allegations.

Appellants contend, however, that the trial court erred in finding that they were not entitled, as a matter of right, to litigate the issue of their alter ego liability before a jury.

It is well-settled that the alter ego doctrine is "essentially an equitable one and for that reason is particularly within the province of the trial court." (*Stark* v. *Coker* (1942) 20 Cal.2d 839, 846 [129 P.2d 390].) Thus, the

"constitutional guaranty of the right to a jury trial does not apply to actions involving the application of equitable doctrines and the granting of relief that is obtainable only in courts of equity. Accordingly, a jury cannot be demanded as of right in such actions." (41 Cal.Jur.3d, Jury, § 6, p. 24, fn. omitted.)

We conclude, therefore, that the trial court properly found that appellants "are not entitled as a matter of right to a jury trial."

### Amendment of Summary Judgment

■ Appellants' second contention is that the trial court erred in amending the summary judgment. They argue that because a trial court may not make factual determinations at a summary judgment hearing, it should not be allowed "to make such determinations at a later motion and apply them retroactively to the previous stage of procedure." They claim that an amendment adding judgment debtors is available only after a "trial on the merits."

It is true that a motion for summary judgment is an improper vehicle for resolving disputed issues of fact. (See generally, *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 318 [159 Cal.Rptr. 416]; *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].) Thus, the trial court here could not have determined the issue of appellants' alter ego liability at the hearing on the motion for summary judgment, even if appellants had been named as defendants.

Dow Jones maintains, nonetheless, that a trial court may add a post-judgment debtor, pursuant to Code of Civil Procedure section 187,[1] subject only to due process considerations.

We agree. A trial court has the authority to amend a judgment in order to add additional judgment debtors. Code of Civil Procedure section 187 has often served as the basis for such an amendment of a judgment, pursuant to the alter ego doctrine. (E.g., see *Alexander* v. *Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 44 [163 Cal.Rptr. 377]; *Schoenberg* v. *Romike Properties* (1967) 251 Cal.App.2d 154, 168 [59 Cal.Rptr. 359]. See also 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, §§ 123-124, pp. 392-394; 2

---

[1]Code of Civil Procedure section 187, provides: "When jurisdiction is . . . conferred on a court . . . all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or statute, any suitable process or mode of proceeding may be adopted which may appear most comfortable to the spirit of this code."

Witkin, Cal. Procedure (2d ed. 1970) Actions, § 3, pp. 881-882, § 6, pp. 884-885.) And, the general rule is that "a court may amend its judgment at any time so that the judgment will properly designate the real defendants." (*Alexander* v. *Abbey of the Chimes, supra,* 104 Cal.App.3d 39, 45.)

We perceive no reason to depart from that rule here. The appellants here were the real defendants. The court correctly amended the judgment to reflect that fact. Although appellants' alter ego liability could not have been determined at the hearing on the motion for summary judgment, that fact is immaterial. This issue was decided at the later hearing on the motion to amend. The purpose of the hearing on the former motion was to determine whether any triable issues of fact existed, and the purpose of the hearing on the latter motion was to try issues of fact. The trial court did not make its findings of fact at the hearing on the motion for a summary judgment, but at the hearing on the motion to amend the judgment. And, as previously stated, a trial court is empowered to determine alter ego issues. The later hearing did not, somehow, "taint" the previous summary judgment proceeding. The hearing on each of the motions was procedurally separate and correct.

There was no error in the amendment of the judgment.

### *Right of Due Process*

■ Appellants, quoting *McRae* v. *Bates* (1961) 196 Cal.App.2d 510, 514 [16 Cal.Rptr. 565], claim that they were denied due process on the basis that they did not have an "opportunity to present [their defenses], at least to the extent that they were not determined in the former action which [they are] alleged to have controlled." This argument apparently refers to appellants' opportunity to defend themselves on the alter ego issue at the original, summary judgment hearing: They were not named parties in the original action against Communimark and, consequently, the issue of their alter ego liability for Communimark was not raised in the original summary judgment proceeding. Yet, the order granting the motion to amend the judgment joined them as judgment debtors.

Appellants do not contest the propriety of amending a judgment to include alter egos as postjudgment debtors under other circumstances. They argue that such an amendment is, however, proper only if the amended judgment follows a "trial on the merits," whereas here they were added as judgment debtors without having had the opportunity to "litigate factual issues" behind the judgment. They cite *Motores De Mexicali* v. *Superior Court* (1958) 51 Cal.2d 172, 176 [331 P.2d 1] for the proposition that "due process requirements . . . mandate that any party sought to be added to a judgment

has not only the right to be 'present' (even if presence is translated to mean *control*) but to 'litigate' 'questions beyond their relation to the allegedly *alter ego* corporation.' " Appellants here seem to argue that they should not have been added as judgment debtors because they never had an opportunity actually to litigate the issues pertaining to the liability of Communimark.

We conclude otherwise. We note that appellants "do not challenge the propriety of the granting of summary judgment" against Communimark. Nor has Communimark appealed from that judgment. The real issue is not whether appellants (or, technically, Communimark) actually litigated the issue of Communimark's liability, but rather whether they had an opportunity to present a defense. The reason that there was no eventual "trial on the merits" is that the trial court found no material triable issues of fact and, therefore, granted the summary judgment. (Code Civ. Proc., § 437c.)

While appellants, themselves, technically were not given the opportunity to convince the trial court that material issues of fact did exist because they were not then named parties, they were able to do so through the vehicle of Communimark. Communimark did present a defense at that first, summary judgment hearing. It apparently however, presented no material issue of fact, perhaps because none existed. And, both Communimark and appellants are satisfied with, or at least accept, the judgment against Communimark that followed.

Appellants' real point seems to be that *they* should be allowed to "litigate factual issues" concerning *their* liability to Dow Jones, else they cannot properly be added as judgment debtors. We conclude otherwise. Appellants appear to miss the significance of the alter ego determination: They concede the validity of the judgment against Communimark and do not challenge the alter ego determination. Yet, the latter determination necessarily had the effect of holding appellants responsible because Communimark was responsible. Thus, no "trial on the merits" is necessary or appropriate.

Appellants also claim that "[t]here were clear disputes concerning the alter ego identity of appellants . . . that could not be resolved without extensive factual determinations . . . [which] could not have been made at the motion for summary judgment." Appellants offer no clue as to what the "clear disputes" are, but they did, in fact, litigate the alter ego issue at the hearing on the motion to amend the summary judgment. Appellants indicate that the court received into evidence 17 documentary exhibits and heard testimony during a day and a half, including that from "the calling" of Gerard Avenel, himself. Appellants, themselves, describe the amendment of the judgment as having been obtained "after a hearing at which numerous triable factual issues were presented and decided by the court."

And, as a consequence of that extended hearing, there is substantial evidence in the record to support the trial court's conclusion that appellants were the alter egos of Communimark and to infer that appellants controlled the defense of that corporation. Gerard Avenel was chief executive officer of Communimark. He was charged with knowledge of its affairs. The attorneys representing appellants are the same ones who represented Communimark. In the case before us, as in *Schoenberg*: "There was no showing below, and there is not the slightest suggestion in the briefs of appellants, that anyone, other than . . . [defendant], had control of the litigation. Who else had the authority to employ attorneys and provide for the expense? Who else was interested in the fate of the corporation? If not . . . [defendant], who else? Appellants do not say. Manifestly, . . . [defendant] had control of the defense of the action by . . . [plaintiff]." (*Schoenberg* v. *Romike Properties, supra,* 251 Cal.App.2d 154, 168.)

Clearly then, appellants here, under *Schoenberg*-type circumstances, had the opportunity to raise material factual issues at the hearing on the motion for summary judgment concerning the liability of Communimark. Appellants did not raise such issues, and they have conceded the validity of the judgment against Communimark.

It is also clear that appellants at the later motion had formally become parties, controlled the litigation for themselves, and fully participated in the proceeding which resulted in the alter ego determination and their being added as judgment debtors.

While the procedural process in the present case was somewhat different than that in *Alexander,* we conclude as did that court: " '[T]he action was fully and fairly tried.' " (*Alexander* v. *Abbey of the Chimes, supra,* 104 Cal.App.3d 39, 45.) There was no denial of due process.

The judgment is affirmed.

Elkington, Acting P. J., concurred.

**NEWSOM, J.**—I respectfully dissent.

I agree with appellant's contention that the procedure approved in the majority opinion effectively deprives him of his right to a jury trial on the underlying "open book account" litigation.

Appellant was not a party to the lawsuit against Communimark, which terminated in summary judgment; had he been so, undeniably he had a right to jury trial. How, then, can we say, in the absence of evidence from ap-

pellant, that summary judgment would have foreclosed *his* constitutional right to trial by jury? Or that, because Communimark presented no cognizable defense, *a fortiori* appellant had none because of later proof that for some purposes Communimark and appellant were alter egos?

Moreover, I read Code of Civil Procedure section 187 as a mere affirmation of the general principle that courts may do what is necessary to implementing judgments rendered *where jurisdiction obtains.* Certainly, I think, it cannot be read as investing a court with jurisdiction it never possessed, or permitting, in the supposed interests of judicial economy or convenience, amendment of a judgment to embrace persons over whom jurisdiction never existed, thus to deprive them of property without benefit of jury or, in fact, *any* trial, merely because *probably* judgment would have been entered against them personally had they ever gone to trial.

Principally for this reason, but also because I do not believe the subject procedure comports with the dictates of due process, I would reverse the judgment.