Opinion
 

 JONES, J.
 

 In this appeal, Charles G. Oewel (appellant) contends the judgment below must be reversed because the trial court failed to issue a statement of decision under Code of Civil Procedure section 632. Appellant also contends substantial evidence does not support the trial court’s finding that appellant is the alter ego of the named limited liability defendants, Oewel Partners, Limited (OPL) and Oewel Partnership, Inc. (OPI).
 

 The challenged judgment is an amended final judgment. Stuart J. Gruendl (respondent) moved to amend the original judgment pursuant to Code of Civil Procedure section 187
 
 [1]
 
 to add appellant as a judgment debtor on an alter ego theory. In resolving respondent’s motion to amend, the trial court necessarily determined issues of fact both as to respondent’s alter ego claim, and as to appellant’s defense that respondent is estopped from asserting alter ego liability against appellant.
 

 Under the circumstances of this case, we conclude the court was obligated to prepare a statement of decision. When a motion to amend judgment seeks to impose alter ego liability for a judgment on one who was neither named nor served as a party defendant in the action, the trial court is obligated to prepare a statement of decision when a timely request is made under section 632.
 

 We also conclude the trial court erred as a matter of law by finding appellant individually liable for the judgment against OPL, a limited partnership, on an alter ego theory.
 

 We therefore reverse the judgment, and remand this matter to the trial court for issuance of a statement of decision and a new judgment. In light of our decision, we do not reach the issue of whether substantial evidence supports the trial court’s finding that appellant is the alter ego of OPI.
 

 
 *657
 
 Background
 

 Appellant is the sole shareholder of OPI, a corporation.
 
 [2]
 
 OPL is a limited partnership. OPI is the general partner and appellant the sole limited partner of OPL. OPI and OPL are part of a complex structure of corporations and limited partnerships set up by appellant for the purpose of developing, constructing, and managing real estate.
 

 Respondent was employed by OPI and OPL as a vice-president and development manager from April 1, 1988, until he resigned in March 1991. His duties included seeking new development opportunities, obtaining government approvals, securing financing, assisting in leasing space in commercial projects, and assisting in the construction process. In addition to a base salary, respondent received incentive compensation for locating and signing lessees. Respondent also held limited partnership interests in several limited partnerships that appellant had created to hold title to individual development projects. Respondent knew that appellant was the sole shareholder of OPI, and that OPI was the general partner of OPL.
 

 By December 1990, OPI and OPL were in financial distress, and respondent was worried they would not pay his commissions. According to respondent, appellant told him at a meeting on January 4, 1991, “that cash was short; he [appellant] would have to suspend our salaries and propose a new compensation program.” The new compensation program consisted of a suspension of current salaries, increased commissions, and absolute repayment of all past-due commissions. Respondent testified that he could not have afforded to stay with OPI and OPL if appellant had not reaffirmed his right to be paid his past-due commissions, and that he continued to work for OPI and OPL based on appellant’s promises.
 

 During January, February, and part of March 1991, respondent received payments on his past-due commissions. Nevertheless, in March 1991, respondent tendered his resignation to appellant. Upon receipt of respondent’s resignation, appellant told respondent he was not owed any more money. Respondent claimed that at the time he resigned he was owed $30,089 in past compensation.
 

 Respondent thereafter initiated this action against OPI and OPL, alleging causes of action for back wages and for penalties under Labor Code sections 201-203 for willful failure to pay compensation due upon respondent’s resignation of his employment. After a trial, a jury returned a verdict in favor
 
 *658
 
 of respondent and awarded damages in the amount of $47,330.58. The trial court also awarded respondent prejudgment interest and costs, including attorney fees, totaling $36,354.01, bringing the total amount of the judgment to $83,864.59.
 

 OPI and OPL failed to pay the judgment due to insufficient assets. Thus, on July 27, 1994, respondent moved to amend the judgment to add appellant as a defendant and judgment debtor on an alter ego theory. Appellant opposed the motion, contending, among other things, that respondent was estopped from alleging alter ego liability against appellant, and that respondent had failed to produce evidence that appellant is the alter ego of OPI and OPL. By minute order dated August 14, 1995, the trial court informed the parties an evidentiary hearing was unnecessary and took the matter under submission. On October 31, 1995, the court issued a minute order granting the motion to amend, stating that it had “considered all the evidence including evidence produced at the trial and it appears Charles J. Oewel was the alter ego of defendants." The court made no other findings of fact.
 

 On November 6, 1995, appellant sought relief by filing a motion for reconsideration, motion to set aside, or, in the alternative, a motion to vacate. Appellant also made a timely request for a statement of decision under section 632. All of these were denied by the trial court. On February 22, 1996, the court filed an amended final judgment adding appellant as an additional judgment debtor based on a finding that “Charles G. Oewel was and is the alter ego of defendants."
 

 Discussion
 

 I.
 
 The Trial Court Erred as a Matter of Law by Imposing Liability on Appellant as the Alter Ego of OPL
 

 We first address the issue of whether the trial court erred as a matter of law by finding that appellant is the alter ego of OPL.
 

 OPL is a limited partnership and appellant is its sole limited partner. Corporations Code section 15632, subdivision (a) provides, in pertinent part, that: “A limited partner is not liable for any obligation of a limited partnership unless named as a general partner in the certificate or, in addition to the exercise of the rights and powers of a limited partner, the limited partner participates in the control of the business. If a limited partner participates in the control of the business without being named as a general partner, that partner may be held liable as a general partner only to persons who transact business with the limited partnership with actual knowledge of that partner’s
 
 *659
 
 participation in control and with a reasonable belief, based upon the limited partner’s conduct, that the partner is a general partner at the time of the transaction.” (Corp. Code, § 15632, subd. (a).) A limited partner may not be deemed to participate in control of the business merely because he or she is an officer, director, or shareholder of a corporate general partner (Corp. Code, § 15632, subd. (b)(1)), or because he or she “[a]ct[s] as a surety for the limited partnership or for a general partner, guaranteed one or more specific debts of the limited partnership, ... or lend[s] money to the limited partnership or a general partner.” (Corp. Code, § 15632, subd. (b)(3).)
 

 The general partner of OPL is OPI and not appellant individually, a fact of which respondent was aware. Appellant may not be deemed to have participated in control of OPL merely because he exercised his duties as president of OPI or because he may have acted as a surety for, or lent money to, OPL. (Corp. Code, § 15632, subds. (a), (b)(1) & (3).) Moreover, nothing in the record otherwise suggests that appellant, in his capacity as a limited partner, should be held liable for OPL’s partnership debts.
 

 In finding appellant to be the alter ego of
 
 both
 
 OPI and OPL, the trial court ignored OPL’s status as a limited partnership and the statutory limitations on appellant’s individual liability for OPL’s debts. We therefore hold that the trial court erred as a matter of law by imposing liability on appellant as the alter ego of OPL.
 

 II.
 
 Under the Circumstances of this Case, the Trial Court Erred by Failing to Issue a Statement of Decision
 

 Appellant contends the trial court’s order must be reversed because the court denied his request for a statement of decision under section 632. Under the circumstances of this case, we agree.
 

 Section 632 provides, in pertinent part, that; “In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision.” Failure to issue a statement of decision in response to a timely request therefor is reversible error.
 
 (Carpenter
 
 v.
 
 Pacific Mut. Life
 
 
 *660
 

 Ins. Co.
 
 (1937) 10 Cal.2d 307, 326 [74 P.2d 761];
 
 Injectronics, Inc.
 
 v.
 
 Commodore Business Machines, Inc.
 
 (1979) 100 Cal.App.3d 185, 188 [160 Cal.Rptr. 667].)
 

 The question in this case is whether a statement of decision is required when the court rules on a motion to amend judgment to add a judgment debtor on an alter ego theory. The express language of section 632 requires a statement of decision only upon the “trial of a question of fact by the court.” (§ 632.) The general rule is that section 632 does not require a statement of decision after a ruling on a motion.
 
 (Maria P.
 
 v.
 
 Riles
 
 (1987) 43 Cal.3d 1281, 1294 [240 Cal.Rptr. 872, 743 P.2d 932];
 
 In re Marriage of Baltins
 
 (1989) 212 Cal.App.3d 66, 79 [260 Cal.Rptr. 403];
 
 Los Angeles Unified Sch. Dist.
 
 v.
 
 C. F. Bolster Co.
 
 (1978) 81 Cal.App.3d 906, 916 [146 Cal.Rptr. 789].) This is true even if the motion involves extensive evidentiary hearings and the resulting order is appealable.
 
 (In re Marriage of Simmons
 
 (1975) 49 Cal.App.3d 833, 836-837 [123 Cal.Rptr. 213] [appellant argued findings were required because the “proceedings below involved extensive evidentiary hearings and research and arguments by both sides and therefore qualified as the trial of a question of fact by the court”]; see also
 
 Gonzales
 
 v.
 
 Jones
 
 (1981) 116 Cal.App.3d 978, 983, fn. 6 [171 Cal.Rptr. 567].)
 

 We do not consider this rule to be absolute, however. In this regard, we observe that the California courts have created exceptions to the analogous rule that section 632 is inapplicable in “special proceedings.”
 
 (Maria P.
 
 v.
 
 Riles, supra,
 
 43 Cal.3d at p. 1294;
 
 In re Rose G.
 
 (1976) 57 Cal.App.3d 406, 418 [129 Cal.Rptr. 338] [“[i]n custody-of-minors proceedings, the issues at stake are of such tremendous consequences that findings of fact and conclusions of law as required by section 632 . . . must be considered applicable even though the proceeding is denominated a ‘special proceeding’ ”].) According to one court, “[t]he new test relative to the necessity for findings of fact. . . involves a balancing of the following factors: (1) the importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings.”
 
 (In re Marriage of Wood
 
 (1983) 141 Cal.App.3d 671, 679-680 [190 Cal.Rptr. 469].)
 

 In our view, this case presents circumstances that justify the conclusion that the trial court should have issued a statement of decision. The very nature of the issues raised before the trial court by respondent’s motion to amend and appellant’s opposition compels this conclusion. Both the question of whether appellant is the alter ego of OPI and the question of whether
 
 *661
 
 respondent is estopped from asserting an alter ego theory of liability against appellant are questions of fact. (See
 
 Alexander
 
 v.
 
 Abbey of the Chimes
 
 (1980) 104 Cal.App.3d 39, 47 [163 Cal.Rptr. 377];
 
 County of Sonoma
 
 v.
 
 Rex
 
 (1991) 231 Cal.App.3d 1289, 1296 [282 Cal.Rptr. 796].) The trial court, in resolving respondent’s motion, necessarily “tried” these issues of fact. (See
 
 Dow Jones Co.
 
 v.
 
 Avenel
 
 (1984) 151 Cal.App.3d 144, 149 [198 Cal.Rptr. 457];
 
 Los Angeles Unified Sch. Dist.
 
 v.
 
 C.F. Bolster Co., supra,
 
 81 Cal.App.3d at p. 918 [stating in dicta that “the ‘trial of a question of fact’ may be involved in decisions based upon a motion”].)
 

 Furthermore, the result of the trial court’s decision is imposition of liability on appellant for a substantial monetary judgment upon the trial of a case in which appellant was neither named nor served as a defendant. We recognize that respondent argued in support of his alter ego contention that appellant controlled the litigation and trial leading to the original judgment. However, appellant’s relationship to the entity defendants was well known to respondent at the commencement of his case. Had he pleaded alter ego allegations in his complaint, these allegations would have been subjected to the rigors of the trial process and the trial court would have been obligated to set forth its findings on the alter ego issue in a section 632 statement of decision. We believe that a party faced with such liability only after entry of judgment should have no less a right to be apprised of the trial court’s reasoning. Moreover, a trial court’s failure to issue a statement of decision can have a significant adverse effect on that party’s ability both to assess whether an appeal is justified and, if an appeal is filed, to present an effective challenge to the trial court’s decision.
 

 Finally, the absence of factual findings, both as to the alter ego and estoppel issues, has made appellate review problematic. In particular, the trial court did not expressly rule on the estoppel issue, and we are thus invited by respondent to speculate that the court impliedly rejected appellant’s estoppel contention. One of the primary purposes of a statement of decision is to facilitate appellate review.
 
 (People
 
 v.
 
 Landlords Professional Services, Inc.
 
 (1986) 178 Cal.App.3d 68, 70 [223 Cal.Rptr. 483].) This policy consideration further justifies our conclusion.
 

 Under these circumstances, we conclude that the trial court should have issued a statement of decision pursuant to appellant’s timely request therefor.
 
 (Carpenter
 
 v.
 
 Pacific Mut. Life Ins. Co., supra,
 
 10 Cal.2d at p. 326;
 
 Injectronics, Inc.
 
 v.
 
 Commodore Business Machines, Inc., supra,
 
 100 Cal.App.3d at p. 188.) We caution, however, that although it may be the better practice for trial courts to issue statements of decision or findings of fact when ruling on motions that turn primarily on factual determinations
 
 *662
 
 (see, e.g.,
 
 Dow Jones Co.
 
 v.
 
 Avenel, supra,
 
 151 Cal.App.3d 144), our conclusion is not intended to have application beyond the facts of this particular case.
 

 Disposition
 

 The judgment is reversed. The matter is remanded with directions to issue a statement of decision as to the liability of appellant as the alter ego of OPI and thereupon to render a new judgment. Each party to bear its own costs on appeal.
 

 Peterson, P. J., and Haning, J., concurred.
 

 [1]
 

 All further statutory references are to the Code of Civil Procedure except where otherwise indicated.
 

 [2]
 

 OPI is also known by the name 55 Green Partnership, Inc. Because the parties have consistently referred to this entity as OPI in their briefs, we do so as well.