Filed 3/22/24  Remington v. Wade CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JON REMINGTON et al., | H050667 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 17CV310715) |
| v. | |
| STEPHEN R. WADE, | |
| Defendant and Appellant. | |

Plaintiffs[1] sued Sierra Land Associates, LLC seeking a declaratory judgment establishing their title to real property on the ground that Sierra failed to exercise its unassignable option to purchase the property.  Stephen R. Wade was Sierra's counsel, one of its two controlling members, and, as revealed on the eve of trial, Sierra's assignee as to the disputed option.  On this revelation, the parties stipulated Wade was the real party in interest for the defense.  Prevailing at trial, plaintiffs secured a judgment and fee award against Sierra.  Wade appeals from the latter order adding him as a judgment

---

[1] By the time of trial, the plaintiffs were Jon Remington, Diane Brandenburg as trustee of (1) the Jackson Lee Brandenburg Separate Property Trust and (2) the Taylor Ann Brandenburg Separate Property Trust, and Karen D. Brandenburg as trustee of her revocable trust.

debtor, contending the trial court exceeded its jurisdiction and abused its discretion under Code of Civil Procedure section 187.[2] We affirm.

## I. BACKGROUND

Sierra owned real property subject to a loan evidenced by a promissory note and secured by a deed of trust. Wade began representing Sierra by 2011, when Sierra filed for bankruptcy. In 2013, facing nonjudicial foreclosure on the property, Sierra claimed the loan was usurious. To resolve the dispute, Sierra entered a settlement agreement with Remington; Drew Winkler; Commercial Estate Management, LLC; Eric Brandenburg, Trustee of the Eric Brandenburg Separate Property Trust dated August 14, 2001; and Karen D. Brandenburg. As Sierra's counsel, Wade was privy to the settlement negotiations and was named in the settlement agreement as a person entitled to copies of certain notices.

Under the settlement agreement, Sierra executed in favor of Remington and the Brandenburgs a deed in lieu of foreclosure, which was recorded on August 5, 2013. In return, Remington and the Brandenburgs entered an option agreement with Sierra.

Under the option agreement, Sierra acquired the nonassignable right to purchase the property for $300,000 within three years. Failure to timely exercise the option, failure to pay the $300,000 by the close of a 60-day escrow, or assignment of the option before the close of escrow would constitute a default. Sierra provided Remington and the Brandenburgs a quitclaim deed, which they would be entitled to record if Sierra defaulted.

In early 2015, Wade learned that Sierra's two members lacked "the financial wherewithal to pursue development of the property." So Wade agreed to "fund [development] at least through the entitlement of the property," and one of the members then assigned his membership interest to Wade.

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

Later that year, after Wade balked at the amount he would need to invest in the property, Sierra's other member and its manager/former member orally agreed that Sierra would assign the option to him. The assignment required Wade to assume all of Sierra's obligations under the option agreement. Sierra did not then disclose any assignment to plaintiffs.

Neither did Wade, who as Sierra's counsel instead notified Remington and the Brandenburgs that Sierra was exercising the option.[3] When no one paid the purchase price, Remington and the Brandenburgs instructed the title company to record the quitclaim deed. Wade objected. The deed went unrecorded.

In 2017, Remington, Lee Brandenburg as successor trustee of the Eric Brandenburg Separate Property Trust dated August 14, 2001, and Karen D. Brandenburg sued Sierra, asserting causes of action for breach of the option agreement and declaratory relief establishing their title to the property.[4]

Sierra, represented only by Wade, answered the complaint in 2018, after an unsuccessful motion for change of venue. Sierra's answer made no reference to assignment of the option agreement. Rather, Sierra's central defenses in the case were that the settlement agreement was a disguised security device or an equitable mortgage and that plaintiffs' predecessors in interest improperly refused to extend the escrow period.

In 2019, Sierra, represented only by Wade, responded to plaintiffs' form interrogatories. The responses identified Wade, as Sierra's attorney, as an individual with personal knowledge of each of Sierra's affirmative defenses.

---

[3] When Sierra exercised the option, the assignment had been made orally, but had not been reduced to writing. It was not reduced to writing until later in 2016, but the written assignment had a backdated effective date in 2015.

[4] During the litigation, Lee Brandenburg passed away and Karen D. Brandenburg transferred her interests to a revocable trust.

The day before the 2021 trial, plaintiffs' counsel informed Wade that Sierra had been suspended by the California Secretary of State and the California Franchise Tax Board. Counsel advised Wade that plaintiffs would move in limine for an order barring Sierra from presenting any defense at trial. At that, Wade disclosed the assignment.

The first day of trial, the parties stipulated that Wade, as Sierra's assignee, was "the Real Party in Interest to this action as Defendant." When plaintiffs later noted that their written motion in limine to disqualify Sierra remained pending, Wade moved to substitute himself for Sierra as the party defendant. Plaintiffs opposed the request on the ground that Sierra had no right to assign the option. Rather than rule on Wade's motion, the court left the issues presented by plaintiffs' motion in limine "hanging," citing ambiguity as to when Sierra was suspended, whether Sierra could reinstate itself, and ultimately whether "we . . . have to mess around with whether they're assignments, or non-assignments or otherwise." Plaintiffs withdrew their motion in limine the next day, after the close of evidence. The court never ruled on Wade's motion to substitute himself for Sierra as a party.

The trial court found for plaintiffs on their declaratory relief cause of action.[5] The court determined that the settlement agreement was neither a disguised security interest nor an equitable mortgage but an absolute transfer of title. Further, the court found that Sierra forfeited its option by failing to properly exercise it. Alternatively, the court found that Sierra's assignment to Wade, if valid, was an "outright violation of the option agreement" that negated Sierra's exercise of the option.

The trial court entered a declaratory judgment for plaintiffs and against Sierra. The court declared that plaintiffs hold all legal and equitable title in the property and required Sierra to assist in executing and recording necessary documents. The judgment

---

[5] The court found that plaintiffs "seem[ed] to have . . . abandoned" their claim for money damages.

4

provided for plaintiffs to recover their legal costs according to proof. Never having been formally made a party, despite his stipulated status as Sierra's assignee and real party in interest, Wade was not named in the judgment.

After entry of the judgment, plaintiffs filed a memorandum of costs and a motion for attorney fees. Neither Sierra nor Wade opposed. The trial court awarded $144,946.50 in attorney fees, finding the fee award authorized by both the settlement agreement and the option agreement, and $5,673.28 in costs for plaintiffs and against Sierra.

Plaintiffs then moved to add Wade as a defendant bound by the judgment, including the award of attorney fees and costs. Further, plaintiffs requested an award of an additional $25,012.50 in attorney fees associated with this new motion against Wade. In an unreported hearing, the trial court granted both requests and entered an amended judgment by which Sierra and Wade are jointly liable for a total of $183,120.10 in attorney fees, costs, and postjudgment interest. The trial court based its ruling on both section 368.5 and section 187.

Wade timely appealed from the entry of the amended judgment.

## II.    DISCUSSION

Trial courts have well-established authority to amend a judgment to add a judgment debtor under section 187. The trial court's exercise of that authority here fell within its discretion under the statute.[6]

---

[6] We assume without deciding that, as Wade contends, section 368.5 would not apply where, as here, the assignment preceded the litigation. Section 187 authorizes "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of this [c]ode" where "the course of proceeding [is] not specifically pointed out by this [c]ode or the statute." (See also *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 133 (*Hearn*).) Section 368.5 on its face provides a course of proceeding where an interest is transferred during the pendency of an action. (See *Hearn*, at pp. 124–125, 133–136, 151 [applying § 368.5 as "[the] more straightforward ground" to add assignee to judgment, where assignment occurred

5

**A.** *The Trial Court's Exercise of its Discretionary Power under Section 187*

**1.** *Legal Principles and Standard of Review*

As a general rule, " 'a judgment may not be entered either for or against a person who is not a party to the proceeding.' " (*Fazzi v. Peters* (1968) 68 Cal.2d 590, 594 (*Fazzi*); see also *Hassell v. Bird* (2018) 5 Cal.5th 522, 549 (conc. opn. of Kruger, J.) (*Hassell*).) But a court is vested with "all the means necessary" to the exercise of its jurisdiction, including "any suitable process or mode of proceeding . . . conformable to the spirit" of the Code of Civil Procedure. (§ 187.) So " 'a court may amend its judgment at any time so that the judgment will properly designate the real defendants.' " (*Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144, 149 (*Dow Jones*).)

The authority to amend a judgment under section 187 encompasses "authority to . . . add a judgment debtor." (*Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 20 (*Carr*).) Amendment to add an alter ego of the original defendant, for example, is " ' " ' " 'an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant.' " ' " ' " (*Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 942 (*Favila*).)

Even without all "the formal elements" of alter ego liability,[7] the addition of a judgment debtor may be proper "if the equities overwhelmingly favor the amendment and it is necessary to prevent an injustice." (*Favila*, *supra*, 65 Cal.App.5th at p. 949, citing

postfiling].) But it does not clearly specify a course of proceeding where the assignment preceded the litigation, and neither party has directed our attention to any case addressing section 368.5's application to a prefiling assignment. Here, unlike in *Hearn*, section 187 provides the "more straightforward ground" to resolve the parties' dispute.

[7] Alter ego liability typically requires: " '(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone.' " (*Favila*, *supra*, 65 Cal.App.5th at p. 947.)

*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1189 (*Carolina Casualty*); see *Carr*, *supra*, 23 Cal.App.4th at pp. 21, 23; see also *Dow Jones*, *supra*, 151 Cal.App.3d at p. 148, fn. omitted [agreeing with party's contention that "trial court may add a postjudgment debtor, pursuant to Code of Civil Procedure section 187, subject only to due process considerations"].)

In *Carr*, the plaintiff sued a defunct business entity that had once operated a hotel, rather than the hotel's current operator. (*Carr*, *supra*, 23 Cal.App.4th at p. 20.) The two entities had overlapping leadership and were represented by the same lawyer. (*Id*. at pp. 20–21.) As the court described the mistake, "Carr sued the right party under the wrong name." (*Id*. at p. 20.) Despite this mistake, the existing entity engaged in conduct that "approached a fraud on the court" by defending the lawsuit in the name of the defunct entity on the merits and raising the defenses available to itself without raising the defense that the defunct entity in whose name it was litigating was a stranger to the action or saying anything "about the mistake in any deposition, motion, or other proceeding." (*Id*. at pp. 20–21.) After judgment was entered, the named defendants "sought to use Carr's mistake to shield the entity which should have been named." (*Id*. at p. 23.) But the trial court amended the judgment to add the existing entity. (*Id*. at p. 20.) Although the Court of Appeal acknowledged that there was "insufficient evidence that [the existing entity] was an alter ego of" the defunct entity, the court affirmed because "the equities overwhelmingly favor[ed] affirmance" in that "allowing an amendment resulted in no prejudice to" the existing entity and "reversal . . . would work an injustice." (*Id*. at pp. 21, 23.)

*Carolina Casualty* arose from a coverage dispute between a law firm and its professional liability insurer. (See *Carolina Casualty*, *supra*, 212 Cal.App.4th at pp. 1183–1186.) After the insurer obtained a final judgment for reimbursement of the insurer's payment to a claimant in 2010, the firm refused to satisfy the judgment on the grounds that it had ceased operations two years before the insurer filed suit and had no

7

assets. (*Id*. at p. 1187.) On the insurer's motion, the trial court added individual attorney Ross to the judgment, reasoning that "Ross . . . actively participated in and controlled the litigation between Carolina Casualty and Ross Law Group" such that "amending the judgment to add Ross '[was] equitably justified, as it seem[ed] apparent that this [substitution] would effectively be an amendment to specify the "true identity" of the culpable party—in terms of Ross's clear role in the underlying coverage dispute, Ross's role in directing the instant litigation, and Ross's permitting suit to advance against a non-entity with no funds, and even encouraging . . . dispositive cross-motions for summary judgment.' " (*Id*. at pp. 1187–1188.) Because substantial evidence supported the trial court's determination that the firm dissolved in 2006, that Ross controlled the coverage litigation, and further that Ross had "encouraged the lawsuit to proceed"—to resolve the coverage dispute between the insurer and the firm—despite "knowing [that the] firm was a dissolved, inactive entity with no funds," the appellate court affirmed. (*Id*. at p. 1193.) The court did not address whether the elements for alter ego liability were present, instead citing *Carr* for the proposition that amendment did not require "all the formal elements necessary to establish alter ego liability." (*Id*. at pp. 1188–1189.) Quoting *Carr*, the court explained that " 'the equities overwhelmingly favor affirmance' " such that "the [trial] court's decision to amend the judgment to add Ross as a judgment debtor was well within its ample discretion under section 187." (*Id*. at pp. 1193–1194.)

"The trial court's decision to amend a judgment to add a judgment debtor is reviewed for an abuse of discretion. [Citations.] Factual findings necessary to the court's decision are reviewed to determine whether they are supported by substantial evidence." (*Favila*, *supra*, 65 Cal.App.5th at p. 943.)

### 2. *Application*

Wade contends that the trial court lacked jurisdiction to bind him to the judgment under section 187. We discern three possible lines of argument in Wade's briefing: (1) a

8

trial court cannot exercise jurisdiction over an entity that was not made a party to the case prior to the entry of judgment;  (2) a trial court cannot exercise jurisdiction over an indispensable party who was not joined before entry of judgment; and (3) to the extent section 187 allows jurisdiction over a third party to be exercised in the first instance after entry of judgment, its predicates are not met here either because there is no alter ego relationship between himself and Sierra or because the equities do not support amending the judgment to add him.  We reject Wade's jurisdictional challenge and identify no error in the trial court's application of section 187.

Wade's jurisdictional objections to the judgment itself and the amendment lack merit.  Even if Wade were an indispensable party at an earlier phase of the litigation, " ' "failure to join 'indispensable' parties does not deprive a court of the power to make a legally binding adjudication between the parties before it." ' " (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 307; see also *Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 161.)  Given the judgment against Sierra, Wade does nothing to reconcile his jurisdictional objection to its amendment with section 187 jurisprudence.  He merely relies on *Fazzi* and Justice Kruger's concurrence in *Hassell* for the general rule that a judgment may not be entered against a nonparty.  (See *Fazzi*, *supra*, 68 Cal.2d at pp. 592–594, 597–598 [holding under precursor to § 369.5 that individual property of an alleged partner is not subject to default judgment against the partnership sued by its common name]; *Hassell*, *supra*, 5 Cal.5th at p. 549 (conc. opn. of Kruger, J.).)  But, as Justice Kruger explained, "there are qualifications to the rule." (*Hassell*, *supra*, 5 Cal.5th at p. 548 (conc. opn. of Kruger, J.) [questioning validity of "an injunction against a nonparty website operator based solely on its past decision to permit the defendant to post content on its website" when the website operator had not had "its own day in court"].)  These authorities do not foreclose amendment under section 187 to add a judgment debtor.  The rationale for permitting such an amendment is that the judgment debtor, though not previously a named party to

9

the proceedings, was as a practical matter the real defendant prior to the entry of judgment. (*Favila*, *supra*, 65 Cal.App.5th at p. 942.)

Turning to the trial court's exercise of its discretion under section 187 to allow the amendment, we identify no abuse because the record supports a finding that the equities overwhelmingly favor amending the judgment to include Wade. (*Favila*, *supra*, 65 Cal.App.5th at p. 943 [abuse of discretion review].)

The trial court found that Sierra's assignment of the option made Wade, as a matter of stipulated fact, the real party in interest in the litigation. Further, the trial court found that the assignment "plac[ed] Wade in the shoes of Sierra," making him liable for fees and costs to the same extent as Sierra. Noting that section 187 applies to allow amendment of a judgment "in the interests of justice" in alter ego cases, the trial court reasoned that section 187 "applies with similar force and logic" to an assignee such as Wade. From this, we understand the trial court's ruling to be rooted in the same equitable principles implicated in alter ego cases—one who controlled the litigation as a de facto interested party should be added as a judgment debtor if necessary to prevent an inequitable result. (See *Favila*, *supra*, 65 Cal.App.5th at p. 947.) The trial court acted within its discretion here, where Wade stipulated that he was the real party in interest as Sierra's assignee and it could be reasonably inferred that Wade—Sierra's attorney, member, and assignee—litigated in Sierra's name for tactical advantage and, on losing, attempted to use Sierra as a shield against liability for fees and costs.

Although Wade argues that the equitable principles undergirding the trial court's authority to add a third party as a judgment debtor are implicated only when the third party is the defendant's alter ego, *Carolina Casualty* and *Carr* hold otherwise. (See *Carolina Casualty*, *supra*, 212 Cal.App.4th at pp. 1188–1189 ["even if all the formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if 'the equities overwhelmingly favor' the amendment and it is necessary to prevent an injustice"]; *Carr*, *supra*, 23 Cal.App.4th at pp. 21, 23

10

[affirming amendment to add entity that was not alter ego].) Moreover, *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110 (*Tokio Marine*), on which Wade relies, does not conflict with *Carolina Casualty* or *Carr*. *Tokio Marine* merely distinguished *Carr* in holding that the trial court improperly added a nonparty insurer as a judgment debtor. (See *Tokio Marine*, *supra*, 75 Cal.App.4th at p. 113, 116–117 [§ 187 did not support the addition of insurer to judgment against contractor because the insurer was "clearly [a] distinct and separate entit[y]" and there was "no basis . . . on which it could be summarily named as a judgment debtor"].) *Tokio Marine* being inapposite, we follow *Carolina Casualty* and *Carr*.

To the extent Wade disputes that the equities overwhelmingly favored amendment here or that amendment was necessary to prevent an injustice, the record amply supports the conclusions implicit in the trial court's order. Indulging all presumptions in favor of the judgment (see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609), the record here supports reasonable inferences that: (1) Wade engaged in inequitable conduct verging on a fraud on the court (cf. *Carr*, *supra*, 23 Cal.App.4th at pp. 20–21) by obscuring the fact of the assignment;[8] (2) Wade attempted to use the plaintiffs' resulting focus on Sierra to shield himself from liability; and (3) an inequitable result would inhere unless Wade, who in fact litigated the case as both counsel and real party in interest, was added to the judgment.

---

[8] Sierra's assignment of the option to Wade also implicates Wade's ethical duties in entering a business transaction with his client. (See Rules Prof. Conduct, rule 1.8.1 [requiring terms "fair and reasonable to the client" and disclosed in writing, a written advisement that the client seek independent counsel, the client's written informed consent to both the terms of the transaction and the attorney's role in it]; see also *In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 850, fn. 2 [former rule 3-300].) The record evidence includes the testimony of one member that Wade did not advise him to seek independent counsel but told the members "if [they] wanted to, [they] could"; Wade said at oral argument that he in fact complied with his obligation to advise his client in writing to seek independent counsel.

11

Wade's long history with Sierra and his experience as Sierra's attorney, including his designation as an individual entitled to notices related to the settlement agreement, supported a finding that Wade was familiar with the terms of both the settlement agreement and the option agreement. It follows, then, that when Wade—by then one of Sierra's two members—secured Sierra's assignment of the option, he knew the assignment violated the option agreement. The court could therefore reasonably infer that Wade—by his affirmative representation that it was Sierra exercising the option and by his protracted failure to disclose the assignment—intended to prevent plaintiffs from learning of the assignment as an independent basis for default. The court could likewise infer that the decision to disclose the assignment turned solely on litigation tactics, once plaintiffs' intended usage of Sierra's suspension jeopardized the ability of either Wade or Sierra to be heard at trial.

Wade's long history with Sierra—in bankruptcy proceedings, in settlement of a nonjudicial foreclosure threat, and in taking a membership stake based on its then-existing members' lack of financial "wherewithal"—likewise supplied the trial court a basis to find that Wade knew Sierra lacked resources to satisfy an award of fees and costs. The court could thus reasonably infer that Wade hoped litigating in Sierra's name rather than his own would insulate him from personal liability for any monetary award.[9]

The record here supports the court's determination that the equities favored adding Wade as a judgment debtor to prevent an injustice. (See *Carr*, *supra*, 23 Cal.App.4th at pp. 20–23; *Carolina Casualty*, *supra*, 212 Cal.App.4th at pp. 1192–1193.) Although the judgment names only Sierra, an ostensibly judgment-proof entity, we assume that the

_____

[9] In support of the motion to amend the judgment, plaintiffs submitted a declaration from their counsel stating that, on the basis of pretrial discovery and posttrial investigation, "it appears that Sierra has limited or no resources upon which to draw for purposes of paying the fee award." This proposition is further supported by the fact that Sierra's license was suspended at the time of trial and by Wade's testimony describing the membership's financial wherewithal prior to his joining.

judgment would be enforceable against Wade due to his relationship with Sierra.  (See *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 318 [observing that "[j]udgments bind not only parties, but also 'those persons "in privity with" parties' "]; see *id*. at pp. 326–327 [explaining that to be bound, a nonparty's interest must be " 'so similar to the party's interest that the party acted as the nonparty's " ' "virtual representative" ' " in the first action' "].)  Even so, the trial court's ruling spared plaintiffs from the additional burden of enforcing the judgment against Wade as a nonparty.  Wade himself made clear at oral argument his conviction that no judgment against Sierra could be binding against him, despite the prelitigation assignment and his trial stipulation that he is "the real party in interest to this action as Defendant."  We see no reason to question the trial court's decision to relieve plaintiffs of the burden of bringing a new action against Wade, when the judgment could be amended to insert " ' " ' " 'the correct name of the real defendant' " ' " ' " at trial.  (*Favila*, *supra*, 65 Cal.App.5th at p. 942.)

The trial court thus acted within its discretion in concluding that the "interests of justice" support amendment here.

The trial court was not required to accept Wade's competing assertion that plaintiffs acted inequitably.  Wade points to plaintiffs' opposition to substituting himself for Sierra and their delay in adding him as a party until they had secured an (unsatisfied) award of fees and costs against Sierra.  But plaintiffs' reluctance to accede to such a request without first litigating the validity of the assignment is not so inherently inequitable that the trial court was obliged to treat it as such.  And Wade, as Sierra's attorney, had every opportunity to oppose plaintiffs' request for fees and costs.  His self-described lack of "motivation" to do so merely underscores the inequity of his own litigation conduct.

## B.    *Waiver and Judicial Estoppel*

Wade contends that the trial court should have invoked the doctrines of waiver and judicial estoppel to deny plaintiffs' request to add him as a judgment debtor.  Wade

13

contends that plaintiffs squandered their opportunity to make him a party to the judgment when they opposed his oral motion to substitute. Consequently, Wade contends that plaintiffs both waived any claim that Wade should be bound by the judgment and award of fees and costs against Sierra and are estopped from adding him. We reject both arguments.

Plaintiffs opposed Wade's oral motion to substitute himself for Sierra—Wade did not seek to join Sierra as a codefendant—on the ground that Sierra had no right to assign the option. But the trial court never adopted plaintiffs' implied position that the invalidity of the assignment left Wade with no interest in the action: the trial court never ruled on Wade's motion, and in the statement of decision, the trial court assumed the validity of the assignment but found it effected a default terminating the right to exercise the option.

These facts do not support application of judicial estoppel.[10] Wade argues that plaintiffs successfully argued Wade could not be added as a party, but later argued that Wade could be added as a party. This overlooks the important detail that plaintiffs opposed substituting Wade for Sierra, but subsequently sought to add Wade without removing Sierra. Plaintiffs' opposition to Wade's request for relief was not inconsistent with their subsequent request for different relief. Moreover, to the extent plaintiffs changed positions on the validity of the assignment, they never successfully asserted that the assignment was invalid.

---

[10] Judicial estoppel may apply to preclude a party from taking inconsistent positions " 'when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it was true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449.)

For the same reasons, the facts do not compel a finding that plaintiffs " ' " 'intentional[ly] relinquish[ed] . . . a known right after knowledge of the facts.' [Citations.]" ' " (*Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1055.)  As the party asserting waiver, Wade bore the burden of proving by clear and convincing evidence plaintiffs intended to relinquish the right to add him as a judgment debtor. (*Ibid*.)  "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.]" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)  Wade failed to persuade the trial court that plaintiffs expressly or impliedly manifested an intention to forgo the right to add Wade as a judgment debtor if the option assignment were deemed valid.  The record discloses no error in the trial court's assessment of the evidence.

## III.   DISPOSITION

We affirm the amended judgment.  Plaintiffs are awarded their costs on appeal.

_____
LIE, J.

WE CONCUR:



_____
GROVER, ACTING P. J.



_____
BROMBERG, J.



*Remington et al. v. Wade*
H050667