Filed 7/24/13  Him H. v. F.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KIM H., | |
| Appellant, | E056897 |
| v. | (Super.Ct.No. TED004838) |
| F.D., | O P I N I O N |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge. Affirmed in part and reversed in part with directions.

Law Office of Gary Harrison and Gary Harrison for Appellant.

Law Office of Angeloff, Angeloff & Levine and Michael J. Angeloff for Respondent.

1

Appellant, Kim H., appeals from a postjudgment order of the family court denying her February 2, 2012, motion to modify a "below-guideline" child support order filed on November 4, 2011, and entered into on September 2, 2011, pursuant to Kim's stipulation with respondent, F.D.  Pursuant to the existing order, F.D. agreed to pay Kim $5,000 per month for the support of their son, J.

Kim first claims that the family court erred as a matter of law in refusing to issue a statement of decision on its order *denying* her motion to increase F.D.'s $5,000 monthly child support obligation.  (Fam. Code, § 3654.)[1]  We reject this claim because no statement of decision was required, as a matter of law.

Kim further claims the family court abused its discretion in three respects:  (1) in refusing to increase the below-guideline support order based on F.D.'s "chronic failure to pay" or past arrearage, which was satisfied in full shortly after the motion was filed; (2) in refusing to order F.D. to make a "child support security deposit" of up to one year's child support payments, or $60,000 (§§ 4560-4561); and (3) in refusing to award her attorney fees based on both needs and abilities (§ 2030) and for her action to enforce the parties' existing child support order (§ 3557).

We find no abuse of discretion in the court's refusal to modify the parties' stipulated, below-guideline child support order.  The parties previously agreed, and the

---

[1]  All further statutory references are to the Family Code unless otherwise indicated.

court found, that F.D.'s payment of $5,000 per month in child support to Kim was sufficient to meet the reasonable needs of J., and Kim made no showing on her motion that the needs of J. had changed or that the $5,000 sum was insufficient to meet J.'s needs.

We further conclude, however, the matter must be remanded so that the family court may exercise its discretion to require F.D. to make a child support security deposit, as appropriate. The record shows that the court erroneously did not believe that it had discretion to order a child support security deposit in excess of $6,000, when in fact it had discretion to order a deposit of up to one year's child support payments, or $60,000. (§ 4560-4561.) We also remand the matter for reconsideration of Kim's motion for attorney fees. (§§ 2030, 3557.) In all other respects, we affirm the challenged order.

## II. BACKGROUND

J. was born in December 1999. In March 2000, Kim petitioned to establish F.D.'s paternity of J. and for child support. Kim is a registered nurse, and F.D. is a physician and surgeon. In January 2001, the parties entered into a "Stipulation for Judgment of Paternity and Related Orders . . . ," and an order was issued on the stipulation. Pursuant to the January 2001 stipulation and order, F.D. acknowledged paternity and agreed to pay Kim $3,000 per month in child support, plus $410 per month for his share of Kim's employment-related child care expenses, for a total of $3,410 per month.[2]

---

[2] The order was made retroactive to December 1, 2000.

3

The January 2001 stipulation and order further provided that Kim would have sole legal and physical custody of J. and F.D. would have "no contact" with the child. The parties expressly agreed that the $3,410 monthly support obligation was in the best interests of J. and was sufficient to meet his needs, even though it was "below Guideline." (§ 4055.) The parties also acknowledged that "this case is one in which the child is an infant and [F.D.'s] income falls within the 'extraordinarily high income payor' standards . . . ." In January 2001, Kim was claiming that F.D.'s monthly income was $73,267, while F.D. was claiming that his monthly income was $34,000. According to her income and expense declaration, Kim's net monthly disposable income was $3,552 in September 2000.

The January 2001 stipulation and order continued in effect and no further action on it was taken by either party until January 2010, when J. was 10 years of age. At that time, F.D. petitioned to modify the custody portion of the January 2001 stipulation and order by placing J. in the care of Kim's sister, Deborah F. F.D., who had not been in contact with J. pursuant to the order, filed the petition at the behest of Deborah, who had contacted him and informed him that J. was in "a dangerous situation" due to Kim's "severe alcoholism."

Several of Kim's closest family members, including her sister Deborah, her four adult daughters, and her mother submitted declarations in support of F.D.'s petition. The family members expressed grave concern for J.'s welfare because Kim was drinking

4

"extensively" again and was not taking proper care of J. F.D. also asked the court to suspend his child support obligation pending Kim's reunification with J.

Deborah averred that, between 2004 and 2007, Kim and J. came to live near her home in Oregon, "basically so that the entire family could oversee [Kim's] efforts at rehabilitation and could watch [J.] and protect him." Deborah estimated that J. was in her care and custody around 40 percent of the time during that three-year period, and again in July 2008, December 2008, and January 2009. Deborah also cared for J. from May through August 2009, while Kim attended the Betty Ford Clinic. But according to Deborah and Kim's adult daughters, that attempt at rehabilitation, Kim's fifth, also failed and Kim was "again severely drinking extensively." Kim's mother agreed that Kim had been "in [and] out of rehab many times," and that she and Deborah had "come down from [Oregon] many times to rescue [J.]."

According to Kim's adult daughters, the living conditions J. had to endure while living with Kim were "unacceptable and inhumane." There were animal feces and urine "all over the house" and "dishes molding in the sink." There was little to no food in the cupboard or refrigerator and J. was often left to "fend for himself." J. rarely had clean clothes or clothes that fit him, while Kim would spend her money on alcohol, clothing, and jewelry for herself. Kim was evicted from several homes while living with J. J. also missed school, and Kim would drive drunk with him in the car. Kim had been hospitalized for "alcohol poisoning or a related issue" six times, including twice in January 2010, and had "tried to kill herself numerous times by overdosing on prescription

5

drugs while [J. was] in the home." All four daughters described living under similar conditions when they were minors, and they ultimately went to live with their father. None of the daughters expressed any confidence that Kim would recover.

In February 2010, Kim filed a response to the petition, denying its allegations and claiming that Deborah was only seeking to usurp her $3,410 in child support income for J. She claimed she had a five-day "slip" in January 2010 and was now "back on track" with her recovery. She demanded the immediate return of J., whom she claimed Deborah had "abducted" while he was staying with one of her daughters. Concurrently with her response to F.D.'s petition to modify custody, Kim petitioned to modify the parties' January 2001 "below guideline" child support order by having F.D. pay "guideline" child support of $67,850 per month. She claimed that F.D. "grossed" over $8 million during 2009 from several medical entities he owned, while she earned only $8,878.56 during 2009 working as a registered nurse.

At a January 27, 2010, hearing on F.D.'s petition to modify custody, the court found that Kim had "ongoing acute alcoholism" and that F.D. had not been in J.'s life. The court joined Deborah as a party to the case and temporarily awarded her sole physical and legal custody of J. Kim was ordered not to consume alcohol at any time and to undergo an alcohol assessment through the Betty Ford Center.

On April 22, 2010, Deborah was appointed J.'s temporary guardian in a separate proceeding in the probate court. On April 28, the family court temporarily suspended F.D.'s child support obligation. In January 2011, the guardianship was terminated and J.

6

was returned to Kim's care.  While J. was in Deborah's care, the court deemed Kim's petition to increase F.D.'s child support obligation "temporarily moot."

At an April 4, 2011, hearing on Kim's petition to increase F.D.'s child support obligation, the court found that F.D. had an "extraordinarily high income."  The court accepted Kim's representation that F.D.'s income was $733,433 per month and that Kim earned $4,553 per month.  Accounting for additional variables, the court found that "guideline support" was $52,834 per month, but also found that the guideline amount "far exceed[ed]" the reasonable needs of J.  The court based this finding on the parties' January 2001 stipulation that $3,410 was sufficient to meet the reasonable needs of J. at that time, even though F.D. was an extraordinarily high earner at that time.

The court also pointed out that Kim "tacitly accepted" the reasonableness of the $3,410 support obligation "until her second stint with the Betty Ford [C]enter, which prompted the litigation regarding . . . [Deborah] . . . ."  The court said:  "I'm at a loss as to how [J.]'s needs increased dramatically over the fact [Kim] went to Betty Ford.  I get the sense there's a vindictive nature in this litigation, but, nonetheless, I do think at this stage, without further evidence, that the needs of the child will be adequately met by the below-guideline amount of $3,410."  The court accordingly ordered F.D. to pay child support of $3,410 per month effective January 1, 2011, but set a further evidentiary hearing to determine the current, reasonable needs of J.  The court also reserved jurisdiction to modify its $3,410 support order "back to January 1, 2011."  F.D. later

stipulated, and the court found, that F.D. could pay any reasonable support obligation the court ordered.

On September 2, 2011, the date of the scheduled evidentiary hearing to determine the reasonable needs of J., the parties resolved the matter by stipulation and order. The parties agreed, and the court found, that F.D.'s payment to Kim of $5,000 per month was sufficient to meet the "needs of [J.] . . . ." The term "needs" was defined to mean J.'s "present and future needs" "throughout the duration" of his minority, and it was further agreed and ordered that the $5,000 support obligation could "not be modified upwardly" unless Kim presented evidence of "extraordinary health care costs." Kim also agreed to maintain private health insurance coverage for J. The $5,000 support obligation was payable in equal shares on the first and fifteenth of the month, and was retroactive to January 1, 2011. The court's findings and order on the September 2, 2011, stipulation were filed on November 4, 2011.

Several days later, on November 14, 2011, Kim filed an order to show cause and affidavit for contempt based on F.D.'s failure to pay her any support after August 2011, pursuant to the parties' November 4, 2011, stipulation and order. Kim acknowledged receiving $3,400 per month from F.D. for the months of January through August 2011, but F.D. did not pay her $5,000 for September, October, or November 2011. F.D. also failed to pay her the $1,600 in monthly arrearages ($5,000 minus $3,400) for January through August 2011 that he agreed to pay pursuant to the November 2011 stipulation and order.

8

An order to show cause was set for hearing on January 24, 2012. F.D. did not appear, and a bench warrant was issued and held until February 10, 2012. On February 10, F.D. paid Kim $45,318, consisting of all support due through February 2012, plus interest and $750 in attorney fees.[3] On the same date, the parties agreed that the arrearage was satisfied, and the order to show cause (contempt citation) was dismissed with prejudice.

Meanwhile, on February 2, 2012, Kim filed the present motion to modify the parties' November 4, 2011, stipulation and order by increasing F.D.'s $5,000 below-guideline support obligation "to guidelines . . . ." Kim argued that the restriction on modification was "an impermissible restriction on the child's right to seek support based on changed circumstances." She argued also that F.D.'s persistent failure to pay support constituted changed circumstances, and rebutted any presumption that the $5,000 support obligation was sufficient to meet the reasonable needs of J. She asked the court to take judicial notice that "there were prior contempt citations" and that F.D. "paid the balance demanded on the eve of the hearing, causing the matter to be dismissed."

In addition to increased "guideline" child support, Kim sought to secure F.D.'s child support obligation with a money deposit (§ 4550) and an asset deposit (§ 4600). She also sought attorney fees based on needs and ability (§ 2030),[4] and other relief.

---

[3] The $45,318 sum was paid in three checks from three separate medical entities, namely, Southwest Trauma Associates, Inc., Temecula Valley Radiation Oncology Medical Group, and Tamda Medical Management, LLC.

*[footnote continued on next page]*

On June 6, 2012, Kim filed a supplemental declaration stating that F.D. paid her $5,000 on March 15, 2012, but nothing on March 1, in violation of the November 4, 2011, stipulation and order requiring him to pay $2,500 on the first and fifteenth of each month. Similarly, F.D. paid Kim $5,000 on April 11 and on May 18. Kim argued that F.D.'s failure to pay on time or "in any predictable manner" showed he was "not entitled to a guideline exception as a high earner" and further supported her claim that asset and security deposits were necessary to secure the support obligation.

A hearing on Kim's motion to modify the November 4, 2011, stipulation and order was held on June 13, 2012. At the conclusion of the hearing, the court denied Kim's February 2, 2012, motion in its entirety, and refused Kim's request to issue a statement of decision explaining its reasons for denying the motion.

When asked at the June 13, 2012, hearing why his client F.D. could not pay his child support on time, counsel for F.D. responded that F.D. was an "extraordinarily busy man." Among other things, he was the "head of multiple surgical groups" and owned "the local hospital." In a responsive declaration, F.D. explained that he was in arrears on his support obligation during 2011 and early 2012 because he had recently been sued for fraud and had been "cut off from approximately $360,000 *per month*." When he entered

_____

*[footnote continued from previous page]*

**4** In requesting attorney fees, Kim did not file Judicial Council form FL-319, which became mandatory on January 1, 2012. Instead, her attorney filed a declaration regarding the amount of fees Kim incurred in filing the February 2, 2012, motion to modify the November 4, 2011, stipulation and order for child support.

10

into the stipulation, however, he was "fully able to make the payments" he agreed to make.

### III.  DISCUSSION

A. *No Statement of Decision Was Required on the Order Denying Kim's Request to Modify the November 11, 2011, Child Support Order (§ 3654)*

Kim first claims the family court committed reversible error in refusing to issue a statement of decision on its order denying her motion to modify the parties' stipulation and order for $5,000 in child support.  She argues that, pursuant to section 3654, the court was required to issue a statement of decision on its order denying her motion to modify child support.[5]  Not so.

Section 3654 provides that:  "At the request of either party, an order *modifying terminating, or setting aside* a support order shall include a statement of decision." (Italics added.)  Kim claims the court violated the statute in refusing to issue a statement of decision on its order *denying* her motion to modify the November, 4, 2011, child support order.

_____

[5]  Before the June 13, 2012, hearing on her motion to modify the November 4, 2011, stipulation and order, Kim filed a request for a statement of decision "[a]s to the issues relating to her [m]otion to [m]odify child support only," citing section 3654.  F.D. filed a written objection, stating:  "If the court merely denies the requested relief . . . there will not have been an order modifying, terminating, or setting aside a support order [pursuant to section 3654]."  At the conclusion of the June 13 hearing, Kim orally renewed her request for a statement of decision.  The court denied the request, stating: "I'm denying your request for statement of decision.  It's not necessary on an order to show cause, Mr. Harrison.  That's denied."

11

Questions of statutory construction are reviewed de novo. (*Apple, Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) "'"[O]ur fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.'"' [Citation.]" (*Ibid.*; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) "We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

There is no ambiguity in the language of section 3654. The statute plainly does not require a statement of decision on an order denying a party's motion to modify an existing support order, but only an order "*modifying, terminating, or setting aside* a support order." (Cf. *In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010-1011 [reversible error not to issue statement of decision on an order *reducing* spousal support].) Thus, no statement of decision was required here.

In support of her argument that Family Code section 3654 requires a statement of decision on an order denying a petition to modify a child support order, Kim relies on older case law applying Civil Code former section 4801, the predecessor to Family Code section 3654. We are not persuaded.

Civil Code former section 4801, as amended in 1976, made findings of fact and conclusions of law mandatory upon the request of either party, and applied to orders denying a motion to modify support. (*In re Marriage of Davis* (1983) 141 Cal.App.3d

12

71, 76 [order denying increase in spousal support]; *In re Marriage of Havens* (1981) 125 Cal.App.3d 1012, 1015-1016 [order denying reduction in child support].) Civil Code former section 4801 has long been repealed, however, and Family Code section 3654 provides in no uncertain terms that a statement of decision is required only on a motion "modifying, terminating, or setting aside" a support order. (Fam. Code, § 3654.)

Nor was any statement of decision required under Code of Civil Procedure section 632. (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040.) The statute requires a statement of decision to be rendered upon "the trial of a question of fact by the court." (Code Civ. Proc., § 632.) Courts have consistently construed the statute as not requiring a statement of decision on a motion, even when the motion involves an evidentiary hearing and the order on the motion is appealable. (*Ibid.*; *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 660; *In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836-837.) Still, courts have created exceptions to this rule for "'special proceedings'" or motions involving important or complex issues. (*Gruendl v. Oewel Partnership, Inc., supra,* at p. 660; see *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 [noting exception for special proceedings involving custody of children].)

Kim does not argue that the order denying her motion to increase F.D.'s child support obligation qualifies as a special proceeding, such that a statement of decision was required under Code of Civil Procedure section 632. Thus she has forfeited any claim that a statement of decision was required under Code of Civil Procedure section 632. (*In re Marriage of Askmo, supra,* 85 Cal.App.4th at p. 1040.) In any event, the order

13

denying Kim's modification petition did not involve a "special proceeding" because it did not involve unusually complex issues. The order was based solely on the written declarations and documents submitted by the parties, and no live testimony was taken at the hearing. This court can readily review the evidence adduced on the motion without the aid of a statement of decision. (*Ibid.*)[6]

B. *The Court Did Not Abuse Its Discretion in Refusing to Increase F.D.'s "Below-Guideline" Child Support Obligation, Because Kim Made No Showing That Any Increase in Support Was Necessary to Meet the Reasonable Needs of J.*

Kim claims the family court abused its discretion in refusing to increase F.D.'s $5,000 "below-guideline" child support obligation. We find no abuse of discretion in the court's denial of this portion of Kim's motion, given that Kim made no showing that any increase in the $5,000 sum was necessary to meet the reasonable needs of J.

"[S]ection 4055 sets forth a statewide uniform guideline for determining the appropriate amount of child support." (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183, fn. omitted.) The amount of child support determined pursuant to the guideline's algebraic formula is "presumptively correct in all cases, and only under

---

[6] Compare *Gruendl v. Oewel Partnership, Inc., supra,* 55 Cal.App.4th at pages 660 and 661 (statement of decision required under Code Civ. Proc., § 632 on order amending judgment to add judgment debtor on alter ego theory) with *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 79 (no statement of decision required on order granting motion to set aside judgment on grounds of duress and extrinsic fraud or mistake).

special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k); see §§ 4052, 4057, subd. (a).)

One special circumstance arises when the guideline amount would be unjust or inappropriate because "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).) Another special circumstance arises when "[t]he parties have stipulated to a different amount of child support under subdivision (a) of Section 4065."[7] (§ 4057, subd. (b)(1).) Each of these special circumstances are applicable here.

The parties stipulated to a below-guideline child support order pursuant to section 4065, subdivision (a) when they entered into the November 4, 2011, stipulation and order to increase F.D.'s monthly support obligation from $3,410 to $5,000. That stipulation and order resolved Kim's earlier, February 2010 motion to modify the parties' January 2001 stipulation and order for $3,410 in support. In May 2010, as part of a series of continuing evidentiary hearings on Kim's February 2010 motion, the court found that F.D. was an extraordinarily high earner (§ 4057, subd. (b)(3)), and that the amount of

---

[7] Section 4065, subdivision (a) provides that the court "shall not approve a stipulated agreement for child support below the guideline formula amount unless the parties declare all of the following: [¶] (1) They are fully informed of their rights concerning child support. [¶] (2) The order is being agreed to without coercion or duress. [¶] (3) The agreement is in the best interests of the children involved. [¶] (4) The needs of the children will be adequately met by the stipulated amount." In the November 4, 2011, stipulation and order, the parties essentially made these required declarations.

15

guideline support would be $52,834 per month (§ 4055). At that time, the court pointed out that the only question to be resolved was the amount of support necessary to meet the reasonable needs of J. Then, on September 2, 2011, the parties entered into what became the November 4, 2011, stipulation and order that F.D. would pay Kim $5,000 per month in child support, and agreed that this amount was sufficient to meet J.'s needs for the duration of his minority, barring extraordinary medical expenses.

Her stipulation notwithstanding, Kim claims she was free to "renege" on the November 4, 2011, stipulation, given that it was for a below-guideline amount of child support. (§ 4065, subd. (d).) Section 4065, subdivision (d) states that when parties stipulate to a below-guideline child support order, "no change of circumstances need be demonstrated to obtain a modification of the child support order to the applicable guideline level or above." And as one court has observed, "the statute lets either party "'renege' on the stipulation at any time, and without 'grounds,'" if the stipulated award is *below* the guideline amount . . . ." (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015.)[8]

F.D. argues that Kim is bound by the November 4, 2011, stipulation and order notwithstanding section 4065, subdivision (d), because the stipulation constitutes "an agreed statement of fact" that $5,000 was sufficient to meet the reasonable needs of J. F.D. relies on *Parkhurst v. Parkhurst* (1897) 118 Cal.18, where the court concluded that

[8] As a general rule, the court will not modify a child support order unless there has been a material change of circumstances since the order was made. (*In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 553.)

the wife was properly denied any increased child support given that she previously agreed, and the evidence substantially showed, that the agreed-upon amount was sufficient to meet the needs of the children. (*Id*. at p. 22.)

We find no abuse of discretion in the family court's refusal to increase F.D.'s child support obligation from $5,000 to the guideline amount, or any other amount, simply because Kim made no evidentiary showing that the $5,000 sum was insufficient to meet the reasonable needs of J.

In support of her February 2012 motion, Kim offered no evidence that J.'s reasonable needs had changed since the parties entered into the November 4, 2011, stipulation and order on September 2, 2011, or that $5,000 was insufficient to meet the reasonable needs of J. at any time. Instead, Kim's motion focused on F.D.'s extraordinarily high income and his child support arrearages accrued during 2011 and early 2012. The court could have reasonably concluded that the $5,000 sum was sufficient to meet the reasonable needs of J., given that the parties themselves made that agreement and the court previously made that finding. Although Kim was free to "renege" on the parties' November 4, 2011, stipulation without showing changed circumstances (§ 4065, subd. (d); see *In re Marriage of Laudeman, supra,* 92 Cal.App.4th at p. 1015), she was not entitled to a guideline support order or any support over the previously agreed-upon $5,000 sum absent a showing that the reasonable needs of J. required it (*Parkhurst v. Parkhurst, supra,* 18 Cal. at pp. 22). Simply put, the court

17

had no evidentiary basis for increasing the $5,000 child support obligation by any amount.

Kim additionally argues that F.D.'s "chronic failure to pay" his $5,000 child support obligation during late 2011 and early 2012 constitutes "special circumstances" justifying an increase in the $5,000 obligation. (§ 4057, subd. (b)(5) [court may deviate from "formula" or guideline amount when "special circumstances in the particular case" would make guideline amount unjust or inappropriate].) Whether the arrearage F.D. accrued between late 2011 and early 2012 justified increasing his $5,000 support obligation was within the sound discretion of the family court. (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1049 [in awarding child support, court has "'considerable discretion'" under § 4057, subd. (b)(5) "'to approach unique cases on an ad hoc basis'" and make just and equitable orders].)

Based on the entire record, the family court did not abuse its discretion in refusing to increase F.D.'s $5,000 support obligation based on the 2011 to 2012 arrearage. F.D. paid the arrearage in full, plus interest and attorney fees on February 10, 2012, only eight days after Kim filed her motion to increase F.D.'s $5,000 support obligation, and F.D. was current in his child support payments at the time of the June 13, 2012, hearing on Kim's motion. The record also shows that F.D. "dutifully paid" his $3,410 monthly support obligation from at least as early as January 2001, when the stipulation and order for that amount of child support was made, through August 2011. In sum, although F.D.

18

was significantly in arrears as of February 10, 2011, he did not have a history of habitually failing to pay or underpaying his child support obligation.

Nor did Kim establish a right to rescind the November 4, 2011, stipulation and order based on fraud, as Kim further claims. (Civ. Code, § 1689.) Kim made no showing that she agreed to the November 4, 2011, stipulation and order to increase F.D.'s monthly support obligation from $3,410 to $5,000 based on any misrepresentation of material fact on the part of F.D. F.D.'s initial failure to pay any support pursuant to the November 4, 2011, stipulation and order was not a misrepresentation of fact concerning his ability or willingness to pay, given that he paid the arrearage in full by February 10, 2012.

Lastly, Kim argues that the matter must be remanded so that the court can establish the current level of guideline support and then determine anew whether the high earner exception applies. Not so. Because Kim failed to establish any basis for increasing F.D.'s $5,000 monthly support obligation, the court was not required to determine the current level of guideline support or determine anew whether the exceptionally high earner exception applied. (See *In re Marriage of Hubner, supra,* 94 Cal.App.4th at pp. 187-188; § 4056.)

C. *Remand is Necessary for the Court to Consider Ordering a Child Support Security Deposit (§ 4560 et seq.)*

A judgment or order issued pursuant to the Family Code, "may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (§ 290.)

19

Sections 4560 and 4561 authorize the court to create a "child support security deposit," by requiring the child support obligor to deposit up to one year's child support payments in an interest-bearing account in advance of the date the payments are due. (See *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1165 [distinguishing separate proceeding requiring obligor to make an asset deposit up to a maximum of $6,000 in assets under § 4600 et seq.].) The child support obligor is entitled to reasonable notice that a child support security deposit will be made, and an opportunity to file an application to reduce or eliminate the deposit. (§ 4565, subd. (a).)

In her February 2, 2012, motion to increase F.D.'s $5,000 monthly child support obligation, Kim requested that the court order both a security deposit and an asset deposit. Kim concedes that F.D.'s payment in full of the 2011 to 2012 arrearage was a complete defense to her request for an asset deposit (§ 4612, subd. (a)), but she correctly points out that the absence of an arrearage was not a defense to the creation of a child support security deposit or money deposit, because section 4612 does not apply in the context of child support security deposits, only asset deposits.

Kim claims the court erred as a matter of law in denying her request for a child support security deposit. She claims the court denied her request based on its mistaken belief that the absence of any arrearage at the time of the June 13, 2012, hearing was a complete defense to her claim for a child support security deposit. (§ 4612, subd. (a).) Based on the transcript of the June 13, 2012, hearing, it appears that Kim is correct.

20

The transcript indicates that the court mistakenly believed that it had no discretion to order a child support security deposit in excess of $6,000 (see § 4614), when in fact it had discretion to order a child support security deposit of up to one year's payments, or $60,000 (§ 4560). Addressing counsel for F.D., the court asked: "I want to know what I can to do make sure he [F.D.] pays on time. Why won't he post $60,000, which is one year's worth of support, put it in a trust fund, she can draw on it every month on the 1st, her $5,000?" In response, counsel for F.D. erroneously told the court: "That would violate the terms of this whole law which says [$]6,000 is the most that you can ask to have put in an account. These issues have already been litigated." In response to counsel's statement, the court said: "The parties can always stipulate to put an amount in." This indicates that the court did not believe it had discretion to *order* F.D. to make a $60,000 child support security deposit under section 4560, but instead had to rely on his willingness to stipulate to create any child support security deposit in excess of $6,000.[9]

Given that the family court evidently erroneously believed it had no discretion to order F.D. to make a $60,000 child support security deposit (§§ 4560-4561), we remand the matter with directions to the court to exercise its discretion to order a child support

[9] Before this colloquy took place between the court and counsel for F.D., counsel for Kim told the court that, according to Kim's supplemental declaration, F.D. was not making his $5,000 payments in equal shares of $2,500 on the first and fifteenth of the month, as the November 4, 2011, stipulation and order required. Instead, he paid Kim $5,000 around the middle of the months of March, April, May, and June 2012. Counsel said: "He never paid anywhere near the [first] . . . [and] if you don't even pay until the 18th, you've really missed two payments at that point."

security deposit of up to $60,000, as the circumstances may warrant, upon remand. In ordering any deposit, the court may exercise "the broadest possible discretion in order to achieve equity and fairness," subject to the applicable child support statutes. (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 470-471.)

D. *Attorney Fees (§§ 2030, 3557)*

Lastly, Kim claims the family court abused its discretion in refusing to award her any portion of her requested $11,190 in attorney fees she incurred in prosecuting her February 2, 2012, motion, to the extent the motion sought to enforce the parties' existing child support order, pursuant to section 3557, and to the extent she sought attorney fees based on needs and abilities, pursuant to section 2030. We remand the matter for further consideration of Kim's fee requests.

Section 3557 states, in pertinent part, that: "(a) Notwithstanding any other provision of law, absent good cause to the contrary, the court, in order to ensure that each party has access to legal representation to preserve each party's rights, upon determining (1) an award of attorney's fees and cost under this section is appropriate, (2) there is a disparity in access to funds to retain counsel, and (3) one party is able to pay for legal representation for both parties, shall award reasonable attorney's fees to any of the following persons: [¶] (1) A custodial parent or other person to whom payments should be made in any action to enforce any of the following: [¶] (A) An existing order for child support. . . ."

22

Section 2030, subdivision (a)(2) provides, in part, that: "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."

Kim points out that she requested attorney fees "based on needs and abilities [pursuant to section 2030] and also for the collection aspects of the case [pursuant to section 3557]." The motion was left to the sound discretion of the court, and its order denying the motion will not be disturbed on appeal unless, viewing the evidence in the light most favorable to the order, no judge could have reasonably made the order. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 314-315.) The extent of the court's discretion is guided by the relevant statutes. (*Ibid*.)

Kim claims the court erred to the extent it denied her request for attorney fees based on her failure to file Judicial Council form FL-319 (Request for Attorney's Fees and Costs Attachment (Family Law)). In denying Kim's motion, the court said: "There's no [FL-]319 filed. . . . so you can't argue under [section] 2030 needs. Effective [January 1, 2012] it was necessary for you to file a family law form [FL-]319 to argue needs." But as Kim points out, the January 1, 2012, version of the form FL-319 states, in its bottom left hand corner, that it was: "Approved for Optional Use." Accordingly, it was not

23

necessary for Kim to file form FL-319 in order to present a request based on the parties' needs and abilities pursuant to section 2030.

Given that Kim was not required to file form FL-319 and our conclusion that the court did not understand that it had discretion to order F.D. to make a child support security deposit of up to one year's support payments, or $60,000 (§§ 4560-4561), we remand the matter to the court to reconsider its denial of Kim's request for fees incurred to enforce the parties' existing, November 4, 2011, stipulation and order for child support (§ 3557) and for attorney fees based on the parties' needs and abilities (§ 2030).[10]

## IV.  DISPOSITION

The matter is remanded to the family court for further consideration of its order denying Kim's request for a child support security deposit (§ 4560 et seq.) and for attorney fees based on needs and abilities (§ 2030) and based on Kim's February 2, 2012, motion to enforce the parties' existing child support order (§ 3557).  In all other

---

[10]  We observe that Kim's income and expense declaration (form FL-150) showed she had zero income as of February 1, 2012, and $8,891 in monthly expenses, $8,000 of which was "paid by others."  F.D., by contrast, did not have a recent income and expense declaration on file given his status as an extraordinarily high income earner.

24

respects, the order denying the relief requested in Kim's February 2, 2012, motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.