Filed 9/5/23  Richard P. v. Kendall P. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICHARD P., an Incompetent Person, etc.,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>KENDALL P.,<br><br>　　　Defendant and Appellant. | A162642<br><br>(San Mateo County<br>Super. Ct. No. 19-PRO-01618)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

　　　THE COURT:*

　　　It is ordered that the opinion filed herein on August 17, 2023, be modified as follows:  At page 10, in the first paragraph, the sentence "Only evidence of 'a past act or acts of abuse' of the elder is required for issuance of an elder abuse restraining order" is deleted and replaced with "Only evidence of 'a past act or acts of abuse' of the elder is required for issuance of an elder abuse restraining order; no 'particularized showing that the wrongful acts will be continued or repeated' is necessary."

---

　　　* Jackson, P. J.; Simons, J.; Burns, J.

1

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated: _____      _____, P. J.

A162642/*Richard P. v. Kendall P.*

2

Filed 8/17/23  Richard P. v. Kendall P. CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICHARD P., an Incompetent Person, etc.,<br><br>    Plaintiff and Respondent,<br>v.<br>KENDALL P.,<br>    Defendant and Appellant. | A162642<br><br>(San Mateo County Super. Ct. No. 19-PRO-01618) |

This is an appeal brought by defendant Kendall P. in an elder abuse case involving his centenarian father, Richard P.  Defendant's sister, Cynthia W., successfully petitioned for an elder abuse restraining order on behalf of Richard based on allegations of financial and emotional abuse.  On appeal, defendant contends this order was not supported by substantial evidence of financial abuse.  He further contends the trial court committed prejudicial error by failing to issue a timely statement of decision.  We conclude defendant's claims lack merit and therefore affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Richard was in his mid-80's.  He and his wife Kathleen moved into the in-law unit of Cynthia and her husband James's Half Moon Bay residence.  Beginning in 2013, defendant, recently disbarred as a California

1

attorney, also lived in separate quarters of Cynthia and James's residence. Kathleen passed away in 2015.

At some point, Cynthia and James's son moved back home, and defendant moved into the in-law unit with Richard. Cynthia and James requested that all three men—their son, defendant and Richard—pay rent.

In April 2017, defendant obtained a durable power of attorney from Richard, who was diagnosed with dementia associated with Alzheimer's Disease that same year.

In early 2018, following a lease dispute, Cynthia and James evicted defendant and Richard from the in-law unit, prompting the pair to relocate to Orange County. On March 29, 2018, Richard executed a lease for a two-bedroom apartment in Corona Del Mar with a monthly rent of $5,900. Richard moved into the first-floor bedroom, while defendant and his then girlfriend, Kristie L., moved into the second-floor bedroom. The threesome incurred move-in expenses of $18,800.

In April 2018, defendant arranged for Richard to execute a lease on a $150,000 Mercedes-Benz GT S for $825 per month. At the time, Richard, 96 years old, no longer had a valid California driver's license and had not driven for several years.

Overall, monthly household expenses totaled $12,000 for the three residents. Defendant, who managed Richard's finances, used Richard's bank accounts and credit cards to pay a share of these expenses. Richard's monthly retirement income was only about $4,100.

After Richard and defendant's relocation to Orange County, Cynthia and James received several calls from Kristie reporting that defendant was not taking good care of Richard. Kristie explained that defendant had spent time in jail and away on unannounced trips, placing the onus of Richard's

care on her. Kristie also indicated that defendant had stopped paying their credit card bills, endangering them financially. Finally, when Kristie called again in December 2019 to report defendant was back in jail, Cynthia and James flew to Orange County, packed Richard's belongings, and took him back to their San Mateo County residence.

On December 24, 2019, Cynthia filed a request for an elder or dependent adult abuse restraining order on grounds of financial, mental, and emotional abuse. The request identified the proposed protected parties as Richard, James and Cynthia, and the proposed restrained party as defendant. On the same day, the trial court issued a temporary restraining order prohibiting defendant from engaging in any abuse toward Richard, contacting him, or coming within 100 yards of him or his home. Defendant was also ordered to stay at least 100 yards away from James and Cynthia.

On January 13, 2020, the temporary restraining order was modified to permit one 10-minute phone call per week between Richard and defendant, subject to three restrictions: (1) the pair were not to discuss finances; (2) Richard could decline to participate in the call; and (3) the call was to be "recorded and prearranged, if possible."

On March 11, 2020, Cynthia and James filed a petition to be appointed conservators of Richard's person and estate. In connection with this petition, an investigator for San Mateo County probed Richard's circumstances and prepared a confidential report for the court. The investigator interviewed Cynthia and James, Richard, and Richard's son Kevin P. Defendant refused to be interviewed. Nonetheless, the investigator ultimately concluded a conservatorship was necessary to protect Richard because "[t]he evidence shows that Richard was victimized by Kendall in a number of ways." In August of 2020, the conservatorship was established.

3

On May 27, 2020, the trial court noted it had made an interim order for the appointment of independent counsel for Richard "given the polarity of the positions that have been taken with regard to his care . . . ." The court further ordered the temporary restraining order would remain in effect per the parties' stipulation.

On February 22, 2021, the court held an evidentiary hearing on Cynthia's elder abuse restraining order petition. On April 15, 2021, after taking the matter under submission, the court granted the petition and issued a restraining order prohibiting defendant from engaging in any physical, financial, or emotional abuse toward Richard and coming within 100 yards of him or his home. Subject to Richard's approval, the restraining order permitted (1) email and mail communications from defendant to Richard in care of his conservators, (2) weekly 15-minute audio or video calls, and (3) monthly 30-minute supervised meetings.[1] However, defendant was prohibited during these interactions from discussing Richard's living arrangement or financial situation.

On April 16, 2021, defendant filed a timely notice of appeal.

## DISCUSSION

The two issues raised on appeal are (1) whether substantial evidence supported the trial court's finding that defendant financially abused Richard and (2) whether the court committed prejudicial error by failing to issue a statement of decision. We address each issue in turn.

---

[1] The audio, video or in-person meetings could be attended or recorded by the conservators.

# I.   *Substantial evidence supported the court's order.*

Under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code § 15600 et seq.),[2] a trial court may issue a restraining order to protect an "elder" who has suffered "abuse" within the meaning of section 15610.07.  (§ 15657.03, subds. (a), (b).)  " 'Abuse of an elder' " includes physical or mental abuse, neglect or abandonment, or financial abuse. (§ 15610.07, subd. (a).)  Relevant here, financial abuse of an elder occurs when a person "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder" either "for a wrongful use" or "by undue influence . . . ."  (§ 15610.30, subd. (a).)  Thus, to establish financial abuse, the plaintiff must establish: (1) a deprivation of an elder's property right that is (2) undertaken for a wrongful use or by undue influence.  (*Ibid.*)

"The terms 'wrongful use' and 'undue influence' are specifically defined as well.  'A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity . . . knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.'  (§ 15610.30, subd. (b).)  ' "Undue influence" means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity.'  (§ 15610.70.)  The test for 'undue influence' is governed by a series of listed factors, including the 'vulnerability of the victim' (§ 15610.70, subd. (a)(1)), the 'influencer's apparent authority' (*id.*, subd. (a)(2)), the 'actions or tactics used by the influencer' (*id.*, subd. (a)(3)), and the 'equity of the result' (*id.*, subd. (a)(4))."  (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*).)

---

[2] Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

5

"[A]n order may be issued under [the Elder Abuse and Dependent Adult Civil Protection Act], with or without notice, to restrain any person for the purpose of preventing a recurrence of abuse, if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse of the petitioning elder or dependent adult." (§ 15657.03, subd. (c).) Moreover, "consistent with the language, legislative intent, and history of the Elder Abuse Act in general (Welf. & Inst. Code, § 15600; Stats. 1982, ch. 1184, § 3, p. 4223), and . . . section 15657.03 in particular," an elder abuse protective order "may issue on the basis of evidence of past abuse, without any particularized showing that the wrongful acts will be continued or repeated." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137 (*Gdowski*).)

On appeal, "the issuance of a protective order under the Elder Abuse Act is reviewed for abuse of direction [*sic*], and the factual findings necessary to support such a protective order are reviewed under the substantial evidence test. [¶] We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings." (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137–1138 (*Bookout*).)

Evidence presented at the February 22, 2021, hearing on Cynthia's elder abuse restraining order petition included the following.[3] According to testimony from James and defendant, after moving to Corona Del Mar, defendant caused Richard to execute a lease to a two-bedroom apartment

---

[3] Defendant's counsel argued for the first time on appeal, at oral argument, that the evidence offered in support of the elder abuse restraining order petition constituted inadmissible hearsay. We decline to address this argument, as it has been forfeited. (*In re I.C.* (2018) 4 Cal.5th 869, 888, fn. 5 [respondent forfeited argument raised for first time at oral argument "by failing to raise it in a timely manner"].)

6

with a rent of $5,900 per month even though his total retirement income was only about $4,100 per month. Although both defendant and his then girlfriend, Kristie, also lived in the apartment (in the second-floor suite), neither placed their name on the lease or otherwise assumed legal responsibility for the property.

Around the same time, defendant caused Richard to execute a lease on a 2018 Mercedes-Benz even though Richard had no valid driver's license and had not driven for several years. The monthly payment on this lease was about $825. While defendant used the Mercedes for appointments and errands benefiting Richard, defendant also used it for his own benefit. Indeed, defendant acknowledged that for about a year the Mercedes was the household's only car. Moreover, defendant continued to drive the Mercedes once Richard, the only person named in the lease, returned to Northern California. Defendant testified that he paid the lease. However, he ignored Cynthia and James's requests to return the vehicle to the leasing agent after they received multiple past due notices from Mercedes.

Also during this time period, defendant used the power of attorney that Richard executed in 2017 to open banking and credit card accounts in Richard's name, which he then used for his and Kristie's benefit, not just Richard's benefit. By December 2019, Richard's credit report revealed he had over $135,000 in credit card debt. Yet, James testified that when Richard lived with him and Cynthia, before relocating to Orange County, Richard signed checks for his own bills and had little or no credit card debt.

Significantly, James testified that as this spending was occurring, Kristie made several calls to Cynthia to report that Richard was frequently left alone and was not being fed properly. Finally, when Kristie called on December 17, 2019, to report defendant was in jail, Cynthia and James

7

traveled to Southern California to move Richard and his belongings out of the Corona Del Mar apartment and back to their home. And despite this move, defendant continued to make demands by email that Richard pay his share of the January 2020 rent and expenses.

Finally, in February 2020, defendant cashed one of Richard's retirement checks by forging his name on the back of it. Specifically, after discovering Cynthia and James closed the bank account into which Richard's checks were normally deposited (as they attempted to address Richard's financial disarray), defendant contacted Richard's pension administrator and asked that his retirement check be forwarded to a new savings account defendant opened in Richard's name. After this check in the amount of $3,079.20 was deposited into the new account on February 3, 2020, defendant withdrew and cashed it. While defendant insisted he preserved the money for Richard and spent none of it, the court was entitled to find defendant's actions in this regard constituted financial abuse.

As our First District, Division Four, colleagues have explained: "The text of section 15610.30 is broad. It speaks not only of 'taking' real or personal property, but also 'secreting, appropriating, obtaining, or retaining' such property (§ 15610.30, subd. (a)(2); accord, *id.*, subd. (a)(1)), and then, to capture the sense of all of these terms, goes on to use the more expansive term 'deprive[.]' (§ 15610.30, subd. (c) ['a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right']). Some of the terms used in section 15610.30 are narrower than others; to 'secret [*sic*],' for example, suggests hiding or concealment, and to 'retain' or to 'obtain' suggests affirmatively acquiring possession of something. But we have no trouble concluding that the broadest of these terms—the word 'deprive'—in its

8

ordinary meaning covers what the [plaintiffs] have alleged. (See § 15610.30, subd. (c); Oxford English Dict. Online (2017) ['Deprivation' means '[t]he action of depriving or fact of being deprived; the taking away of anything enjoyed; dispossession, loss'] at <www.oed.com> [as of Aug. 23, 2017].)" (*Mahan, supra*, 14 Cal.App.5th at p. 861.)

Similarly, in our case, there was a wealth of evidence demonstrating defendant deprived Richard of his property for a wrongful use and by undue influence when he, among other things, caused Richard to execute leases for the Corona Del Mar apartment and the Mercedes-Benz GT S and opened bank accounts and cashed checks in Richard's name. Collectively, these acts placed Richard on the hook for monthly payments far exceeding his modest retirement income, all while benefiting defendant and his then girlfriend. On this record, we conclude Cynthia met her burden of proving by a preponderance of the evidence that defendant engaged in acts of financial abuse that supported the issuance of a restraining order for an elder's protection.

Defendant insists his actions benefited Richard and thus did not constitute abuse. However, James provided credible testimony that by the time Richard returned to Northern California in late 2019, his credit card debt far exceeded $100,000, despite having little or no credit card debt prior to that time. This fact alone undermines defendant's claim. (*Bookout, supra*, 155 Cal.App.4th at pp. 1137–1138 [all conflicts in evidence resolved on appeal in favor of respondent, and all reasonable inferences indulged in favor of upholding the trial court's findings]; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 [one witness's testimony may constitute substantial evidence to support a finding].)

Finally, defendant argues that given the establishment of a conservatorship over Richard and his estate, no purpose was served by imposing the restraining order because defendant lacks any ability to financially abuse Richard in the future. Defendant's argument is misplaced. The statutory language is clear. Only evidence of "a past act or acts of abuse" of the elder is required for issuance of an elder abuse restraining order. (§ 15657.03, subd. (c); *Gdowski, supra*, 175 Cal.App.4th at p. 137.) Accordingly, the order in this case stands.

## II.   *No statement of decision was required.*

We also reject defendant's remaining claim that the trial court prejudicially erred by failing to issue a statement of decision despite the request defendant made for one on February 16, 2021, a week before the evidentiary hearing. As explained *post*, no statement of decision was required in this case.

A trial court must issue a statement of decision "upon the trial of a question of fact" if a party makes a timely request for one. (Code Civ. Proc., § 632.) Generally speaking, this statute applies where there has been a trial followed by entry of a judgment. It does not apply to a court's ruling on a motion "even if the motion involves an evidentiary hearing and the order is appealable." (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 (*Askmo*).)

Defendant insists the proceedings in this case involved "in every real sense a 'trial,' not merely [a] motion," such that Code of Civil Procedure section 632 should apply. However, the trial court itself recognized, when scheduling the evidentiary hearing, "This is a restraining order trial, not a court trial on the merits." More importantly, we know of no case requiring a statement of decision after issuance of a restraining order or simply because

10

there was an evidentiary hearing and live testimony.  We decline to be the first to do so.[4]  (See *People v. Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68, 72 ["section 632 speaks only in terms of 'trial'; and we have discovered no case which defines a hearing on a preliminary injunction, live testimony or not, as a trial"]; *In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836 [findings of fact are only required on issues joined by the pleadings where the decision of the court following the findings is a judgment].)

## DISPOSITION

The elder abuse restraining order of April 15, 2021, is affirmed.

---

[4] Some courts, following *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, have recognized an exception to the rule limiting application of Code of Civil Procedure section 632 to cases involving a trial where special proceedings were involved.  These courts have done so based on a balancing of the following factors: " ' "(1) the importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings." [Citation.]' " (*Askmo, supra*, 85 Cal.App.4th at p. 1040, citing *Gruendl, supra*, at p. 660.)  Other courts have rejected such a broad reading of *Gruendl*.  (E.g., *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 296 [concluding *Gruendl*'s two-part test was not applicable in all cases involving special proceedings, as "*Gruendl* cited the two-part test relating to special proceedings by analogy and did not hold that the same two-part test applied to the ruling on a motion"].)  In any event, the *Gruendl* standard is not met here.  Putting aside the importance of the issues at stake, the second prong is not met.  The factual issues in this case are straightforward, and given the modest evidentiary record, there are no obstacles to effective appellate review notwithstanding the absence of a statement of decision.

 

                                   _____

                                   Jackson, P. J.

WE CONCUR:

_____

Simons, J.

_____

Burns, J.

A162642/*Richard P. v. Kendall P.*